UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

In re:

    Jonathan P. Wardin　　　　　　　　　　　　　　Case No. 08-21951-dob
    and Lisa A. Wardin,　　　　　　　　　　　　　　Chapter 7 Proceeding
　　　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
            Debtors.
_____/

Daniel C. Himmelspach,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Adversary Proceeding
　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 09-2053-dob
Matt M. Hunter,

    Defendant.
_____/

## Opinion Granting the Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment

The Trustee of the Debtors Jonathan P. and Lisa A. Wardin's bankruptcy case commenced a preference action against the Defendant, Matt M. Hunter. In 2005, the Defendant sold a retail store business to the Debtor, Jonathan P. Wardin. As part of this transaction, the Debtor granted the Defendant a security interest in various assets. The issue in this case is whether, under Michigan law, the Defendant properly perfected his security interest when he filed a financing statement that identified the Debtor as "Jon Wardin" instead of by the Debtor's full legal name of "Jonathan P. Wardin." For the reasons explained in this Opinion, the Court concludes that the Defendant's financing statement is sufficient under Mich. Comp. Laws § 440.9502(1)(a) and § 440.9503(d)(i).

## Statement of Facts

The following facts are undisputed. On February 28, 2005, Matthew M. Hunter ("Defendant") and Jonathan P. Wardin ("Debtor")[1] entered into a Purchase Agreement for the sale of the assets of a retail business known as Blue in the Face located at 217 S. Main Street, Mount Pleasant, Michigan 48858. The sale price of the business was $100,000. Pursuant to paragraph 3.1.A of the Purchase Agreement, the Debtor was required to execute a promissory note that provided for monthly installment payments of $2,027.64 at 8% interest per annum until the principal and interest amounts were fully paid. The Purchase Agreement further provides in paragraph 3.2 for the Debtor to grant a security interest to the Defendant in certain assets to be described in the security agreement and for the filing of a UCC-1 financing statement.

On February 22, 2005, at 11:09:32 a.m., a UCC-1 financing statement (the "Financing Statement"), was electronically filed which was assigned document number 2005033330-0. The Financing Statement states: the (1) Debtor's individual first and last name as Jon Wardin (¶ 1b), (2) the name of the secured party as Matt Hunter (¶ 3b), and (3) describes the collateral (¶ 4).

On February 28, 2005, the Debtor executed a Security Agreement and Promissory Note to the Defendant. In paragraph 1.1 of the Security Agreement, the Debtor granted the Defendant a security interest "in certain collateral" described as all of his existing and later acquired personal property, which consisted of accounts, deposit accounts, equipment, goods, and inventory. Under the terms of the Promissory Note, the monthly installment payments commenced on January 15, 2005 with the last payment due on December 15, 2009. A default

---

1. Although the name on the Debtor's bankruptcy petition is indicated as Jonathan P. Wardin, the business transaction documents (i.e., Purchase Agreement; Security Agreement; Promissory Note; UCC-1 Financing Statement; and the Surrender Agreement) completed between the Debtor and the Defendant indicate the Debtor's name as Jon Wardin.

2

subsequently occurred under the Promissory Note and Security Agreement.

Because of financial difficulties, on May 15, 2008, the Debtor and the Defendant entered into a "Surrender Agreement, Consent to Strict Foreclosure and Release Agreement" ("Surrender Agreement"). Under paragraphs two and three of the Surrender Agreement, the Debtor "surrendered possession of the Collateral" to the Defendant "in full satisfaction" of his obligations. In turn, paragraph five of the Surrender Agreement indicates that the Defendant released the Debtor from any and all of his obligations under the Promissory Note.

On July 2, 2008, the Debtor and his wife sought relief under Chapter 7 of the Bankruptcy Code. In their voluntary petition, schedules, and statement of financial affairs the Debtor's name is represented as being Jonathan P. Wardin. According to their voluntary petition, the only other name the used by the Debtor in the last 8 years is disclosed as the Blue Hippo.

The Trustee filed the instant preference action seeking to avoid the transfer between the Debtor and Defendant. The Trustee argues that the Financing Statement filed on February 22, 2005, is ineffective and did not perfect the Defendant's security interest because the proper, full and complete name of the Debtor is Jonathan P. Wardin, not Jon Wardin. The Defendant denies that legal conclusion and counters with the argument that a reasonably diligent searcher using Michigan's standard search logic would uncover its Financing Statement by either an inquiry of "J. Wardin" or "Wardin." Each party filed a motion for summary judgment and then timely responded to the opposing motion for summary judgment.

Subsequent to the hearing on the parties' motions, the Court conducted a status conference to clarify information related to certain facts and exhibits filed by the parties. As a result of the matters discussed during the status conference, the Trustee and the Defendant filed a

3

stipulation that contains a chart, which they represent accurately depicts the results of the search conducted of the Michigan Department of State - Uniform Commercial Code Office's searchable index for all UCC records. The stipulated chart indicates as follows:

| Name Searched | Total Results | Total Results Related to the Debtor | Total Results Filed by the Defendant |
|---|---|---|---|
| Jonathan P. Wardin | 2 | 2 | 0 |
| Jon Wardin | 1 | 1 | 1 |
| J. Wardin | 17 | 3 | 1 |
| Wardin | 40 | 3 | 1 |

Under their stipulation, the parties also requested additional time to file supplemental briefs to apply their stipulation as to the search results to their arguments previously presented to the Court. After granting the parties' request, the Court was later informed of the parties' decision to rely on the materials already in the record. This matter is now fully submitted.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## Applicable Law

Fed.R.Bankr.P. 7056 renders F.R.Civ.P. 56 applicable in adversary proceedings. Rule 56(c) states that a

> judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The central inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the burden of the moving party to inform the Court of the basis of its motion and identify those portions of the record that establish the absence of a material issue of fact. *Celotex*, 477 U.S. at 323. Once the movant fulfills this responsibility, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-moving party must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby,* 477 U.S. at 252. "A material fact is one that would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties, and would necessarily affect the application of an appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must believe the non-movant's evidence and draw "all justifiable inferences" in her favor. *Anderson v. Liberty Lobby*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, "a court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Appoloni v. U.S.*, 450 F.3d 185, 189 (6th Cir. 2006) (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)). Summary judgment is appropriately

granted when the issues in a case involve solely the application of law to undisputed facts.

*Panetta v. Sondergeld (In re Sondergeld)*, 327 B.R. 313, 315 (Bankr. E.D. Mich. 2005).

## Discussion

Under 11 U.S.C. § 547(g), the trustee bears the burden of proving each of the statutory elements under § 547(b). Section 547(b) provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if –
>
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

There are no facts in dispute. Instead, the question before the Court is one of law to be determined under Michigan's version of Article 9 of the Uniform Commercial Code. The Trustee contends that the Defendant possessed an unsecured and unperfected interest in the Debtor's collateral because he failed to use the Debtor's full and complete legal name on the

6

Financing Statement as required under Mich. Comp. Laws § 440.9502 and § 440.9503. According to the Trustee, the Financing Statement is *per se* ineffective, which then means that he has established the necessary elements under 11 U.S.C. § 547(b)(5).

The Defendant disagrees with the Trustee's interpretation of the statutory language in Mich. Comp. Laws § 440.9502 and § 440.9503. First the Defendant argues that neither statute expressly require that a secured creditor list the exact full legal name of a debtor on its financing statement to be effective. As far as his second argument, the Defendant contends that even if the Trustee's interpretation of the statutory language is proper, Mich. Comp. Laws § 440.9506, when coupled with Mich. Comp. Laws § 440.9502 and § 440.9503, leads to the conclusion that his Financing Statement is effective as filed and that his security interest was properly perfected. Accordingly, the Defendant contends that as a secured creditor he did not receive more than he would have received if the transfer had not been made in the Debtor's Chapter 7 case.

The relevant statutes are as follows:

Mich. Comp. Laws § 440.9502, which states in pertinent part:

> (1) Subject to subsection (2), a financing statement is sufficient only if it does all of the following:
>
> > (a) Provides the name of the debtor.
> >
> > (b) Provides the name of the secured party or a representative of the secured party.
> >
> > (c) Indicates the collateral covered by the financing statement.

Mich. Comp. Laws § 440.9503 states in pertinent part that

> (1) A financing statement sufficiently provides the name of the debtor if it meets all of the following that apply to the debtor:
>
> > (a) If the debtor is a registered organization, only if the financing

7

statement provides the name of the debtor indicated on the public
record of the debtor's jurisdiction of organization which shows the
debtor to have been organized.

(b) If the debtor is a decedent's estate, only if the financing
statement provides the name of the decedent and indicates that the
debtor is an estate.

(c) If the debtor is a trust or a trustee acting with respect to
property held in trust, only if the financing statement does both of
the following:

>  (i) Provides the name specified in the trust in its
>  organic documents or, if no name is specified,
>  provides the name of the settlor and additional
>  information sufficient to distinguish the debtor from
>  other trusts having 1 or more of the same settlors.
>
>  (ii) Indicates, in the debtor's name or otherwise,
>  that the debtor is a trust or is a trustee acting with
>  respect to property held in trust.

(d) In other cases, satisfies 1 of the following:

>  (i) If the debtor has a name, only if it provides the
>  individual or organizational name of the debtor.

Finally, Mich. Comp. Laws § 440.9506 addresses the effects of errors or omissions in financing statements and provides as follows:

> (1) A financing statement substantially satisfying the requirements of this part is
> effective, even if it has minor errors or omissions, unless the errors or omissions
> make the financing statement seriously misleading.
>
> (2) Except as otherwise provided in subsection (3), a financing statement that fails
> sufficiently to provide the name of the debtor in accordance with section 9503(1)
> is seriously misleading.
>
> (3) If a search of the records of the filing office under the debtor's correct name,
> using the filing office's standard search logic, if any, would disclose a financing
> statement that fails sufficiently to provide the name of the debtor in accordance
> with section 9503(1), the name provided does not make the financing statement
> seriously misleading.

Neither party directed the Court to any controlling Michigan decisions that interpret the statutes at issue in this adversary proceeding. The Court was unable to locate any direct authority from the Michigan state courts or the Sixth Circuit Court of Appeals. As a result, this Court must predict how the Michigan Supreme Court would rule on the issue. *See Combs v. International Insurance Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938)).

Both parties rely on and cite three cases that originate from Kansas. One of the cases, *Pankratz Implement Co. v. Citizens Nat'l Bank*, 130 P.3d 57 (Kan. 2006) is easily distinguishable because it involved a misspelling of the debtor's name. The facts in this adversary proceeding do not involve the misspelling of the Debtor's name. The other two cases, however, directly address whether the use of a nickname or a shortened form of an individual debtor's name is sufficient for a financing statement to be effective. Each case reaches an opposite result.

The Trustee urges this Court to adopt the logic and analysis of the Tenth Circuit Bankruptcy Appellate Panel in *In re Kinderknecht,* 308 B.R. 71 (B.A.P. 10th Cir. 2004). In *Kinderknecht*, the Bankruptcy Appellate Panel held that for a financing statement to be effective under Kansas's version of the Uniform Commercial Code it must provide the legal name of an individual debtor, not a nickname. *In re Kinderknecht*, 308 B.R. at 73. The *Kinderknecht* court then continued its analysis by stating in part:

> Our conclusion that a legal name is necessary to sufficiently provide the name of an individual debtor within the meaning of § 84-9-503(a) is also supported by four practical considerations. First, mandating the debtor's legal name sets a clear test so as to simplify the drafting of financing statements. Second, setting a clear test simplifies the parameters of UCC searches. Persons searching UCC filings will know that they need the debtor's legal name to conduct a search, they will

9

> not be penalized if they do not know that a debtor has a nickname, and they will not have to guess any number of nicknames that could exist to conduct a search. Third, requiring the debtor's legal name will avoid litigation as to the commonality or appropriateness of a debtor's nickname, and as to whether a reasonable searcher would have or should have known to use the name. Finally, obtaining a debtor's legal name is not difficult or burdensome of the creditor taking a secured interest in a debtor's property. Indeed, knowing the individual's legal name will assure the accuracy of any search that creditor conducts prior to taking its secured interest in property.

*In re Kinderknecht*, 308 B.R. at 75-76.

Although the *Kinderknecht* decision has the virtues of drawing a sharp definition, the application of the *Kinderknecht* rule is not as easy as it would appear at first blush and, after further analysis, raises more questions than answers. For example, the *Kinderknecht* court states that it is not difficult or burdensome to obtain a debtor's legal name. The Michigan Legislature, however, has not given any direction as to the meaning of "the" legal name of the debtor. The Michigan Legislature has clearly distinguished between corporations and other artificial entities and directs a creditor to go to the appropriate state or local agency to determine the exact name of that entity. As for individuals, no such agency exists. Instead, a creditor may resort to reviewing a potential debtor's birth certificate, driver's license, passport, or other form of identification issued by either the federal or state government. There is the possibility that an individual could produce a form of identification that differed from another form of identification. Second, names are not static. Individuals marry, divorce, and change their names for a variety of reasons. Using the *Kinderknecht* court logic, the creditor would need to further inquire of the whereabouts of a borrower and then review the appropriate probate or other state court records to determine if a name change had occurred. Absent a known, reliable, and accessible clearing house to determine the legal name of the individual debtor, the *Kinderknecht*

rule creates more problems than it solves.

*Kinderknecht's* second and third considerations focus on the need for simplification and the avoidance of litigation. For the same reasons as stated above, the lack of a single reliable source makes both goals unachievable. Under the present circumstances, one creditor could utilize a name on a birth certificate and another creditor could utilize a different name of the same individual from a driver's license. After ensuing defaults, both creditors could simply assert their priority rights based upon their respective financing statements and name source. Costly litigation would still ensue. In sum, the Court is not persuaded by the reasoning in *Kinderknecht*.

In contrast, the Defendant urges this Court to adopt the reasoning in *Nazar v. Bucklin National Bank* (*In re Erwin*), 2003 WL 21513158, 50 UCC Rep. Serv. 2nd 933 (Bankr. D. Kan. 2003). In *Erwin*, the creditor, Bucklin National Bank, used the debtor's nickname in its financing statement. The debtor's full name was Michael A. Erwin, but the financing statement was in the name of Mike Erwin. As in this case, the debtor's Chapter 7 trustee conducted a UCC search using the name Michael A. Erwin. The trustee then sought to avoid the bank's lien under 11 U.S.C. § 544(a).

The bankruptcy court in *Erwin* predicted that under Kansas law the full legal name of an individual debtor was not necessarily required on a financing statement. The *Erwin* court concluded that the use of the debtor's nickname for his first name coupled with the debtor's correct surname was sufficient to provide the name of the debtor under the Uniform Commercial Code.

In its analysis, the *Erwin* court reasoned that the Kansas legislature did not specify a rule

11

or a direct source to determine an individual's name like the rules provided by it for certain types of other debtor organizations and entities. 2003 WL 21513158 at *6. The court noted that search logic used by a reasonably diligent searcher would have been broader than just the exact legal name of the debtor. The *Erwin* court explained that the search standards employed by the office of the Secretary of State allowed a party to search UCC records using a range of search criteria for individual debtors that encompassed a narrow search (i.e., an individual debtor's complete legal name) or a broad search (i.e., an individual debtor's last name only). Therefore, the court concluded that as to individual debtors the "reasonably diligent searcher" test survives. 2003 WL 21513158 at *8.

In addition to the cases cited by the parties, the Court reviewed other sources, most notably White and Summers' Uniform Commercial Code. This treatise likewise bemoans the split between *Erwin* and *Kinderknecht*, as well as the difficulty in determining what standard governs the name of an individual debtor. 4 White & Summers, *Uniform Commercial Code*, § 31-12(c) (6th ed. 2010). The White and Summers' analysis recognizes that search results are largely shaped by the search parameters as defined by the searcher and a filing office's "standard search logic." The authors explain that:

> A few courts are considerably more flexible about what they will treat as a proper filing. These courts ask the searcher to use his head and to not accept the proposition that a filing is bad unless it can be found by a search under the debtor's true name. In Nazer v. Bucklin National Bank (In re Erwin) . . . the third party filed under the name Mike Erwin. The debtor's full name was Michael A. Erwin. The trustee's search under the name Michael A. Erwin, did not turn up the filing. But a search under the name Mike Erwin or "Erwin" or "Erwin M." disclosed the bank's financing statement. The court held that the bank was perfected. The court first concludes that 9-503(a) does not require an individual's full legal name for a sufficient debtor name on a financing statement. Rather something containing a nickname may be the correct name, particularly if intelligent use of the search logic will reveal it.

12

> The court finds that "a vestige of the reasonably diligent searcher rule" lives and that a reasonably diligent searcher in the Nazer case should search not only under the name Michael A. Erwin but also under the name Erwin or under the name Erwin, M" We like the court's instinct. Prior to the digitalization of recordings, a reasonably diligent searcher was required to search under several variations of a debtor's name in order to find a relevant recording. We believe that technology should never drive one backwards, yet applying a search as rigidly as the trustee in Nazer suggested and as the courts in Texas and Georgia have held, takes us backwards.

*Id*.

In this case, as indicated by the parties' stipulated chart, the narrowest search is of the name "Jonathan P. Wardin," which did not reveal the Defendant's Financing Statement. The narrowest search, however, is not necessarily the correct search or the only search permitted by Michigan's standard search logic. As urged by the Defendant, a somewhat broader search using either the Debtor's correct last name or his last name and first initial of his first name reveals the Financing Statement filed by the Defendant. The number of Financing Statements resulting from these slightly expanded searches, 1 and 17 respectively, is not burdensome. The slight expansion of a name search to include just the last name and initial of a debtor's first name is both simple and easy to apply. While the search may produce more financing statements to review, the time spent searching these documents is certainly less than the hours later expended in litigation such as the instant case. Finally, the parties do not dispute that the standard search logic for the State of Michigan allows a searcher to control the search information for an individual debtor.

The Michigan Legislature has not provided any direction as to the source one could use to determine an individual debtor's full legal name. In contrast, the Michigan Legislature has provided standards for particular debtor organizations or other debtor entities. *See* Mich. Comp.

13

Laws § 440.9503(1)(a) through (c). To construe Mich. Comp. Laws § 440.9502(1)(a) and § 440.9503(d)(i) in the manner suggested by the Trustee requires this Court to create and impose a standard in Michigan's Uniform Commercial Code. The Court declines to do so and instead leaves the drafting of legislation to the Michigan Legislature, the body constitutionally charged with that duty.

The Court concludes that the Defendant's Financing Statement is sufficient under Mich. Comp. Laws § 440.9502 and § 440.9503 to make the Defendant a secured creditor. *See In re C-L Cartage Co., Inc.,* 899 F.2d 1490, 1493 (6th Cir. 1990) (explaining that "[p]ayments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation"). As a result, the Trustee is unable to establish that the transfer made by the Debtor to the Defendant is more than the Defendant would have received from the Debtor under a hypothetical Chapter 7 liquidation case as required by 11 U.S.C. § 547(b)(5). The Court grants the Defendant's motion for summary judgment and denies the Trustee's summary judgment motion.

## Conclusion

For the reasons stated in this Opinion, the Defendant's motion for summary judgment is granted and the Trustee's motion for summary judgment is denied. Counsel for Defendant is directed to prepare an Order consistent with this Opinion.

**Signed on June 29, 2010**

                                              **/s/ Daniel S. Opperman**
                                              **Daniel S. Opperman**
                                              **United States Bankruptcy Judge**